UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

NOVA GROCERY, INC.,

**MEMORANDUM & ORDER**

                  Plaintiff,        20-CV-2150 (KAM) (MMH)

      - against -


UNITED STATES OF AMERICA AND TOM VILSACK[1],
SECRETARY OF THE UNITED STATES DEPARTMENT
OF AGRICULTURE,

             Defendants.

-----------------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

        Nova Grocery is a small grocery store – measuring approximately 600 square feet – that was authorized to participate in the Supplemental Nutrition Assistance Program ("SNAP") administered by the United States Department of Agriculture ("USDA" or the "Agency"). In 2020, the USDA permanently disqualified Nova Grocery from participating in SNAP after concluding that it had trafficked in SNAP benefits. Nova Grocery filed this action challenging the disqualification pursuant to 7 U.S.C. § 2023(a)(13), and Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is GRANTED.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Tom Vilsack is substituted for Sonny Perdue as a Defendant in this action.

**BACKGROUND**

Nova Grocery is located at 1089 Rutland Road in Brooklyn, New York.  (ECF No. 28-2 ("Defs.' 56.1") ¶ 1; ECF No. 25 ("Pl.'s 56.1") ¶ 1.)  The store measures approximately 600 square feet and was open daily from 7:00 AM to 10:00 PM.  (Defs.' 56.1 ¶¶ 21, 31; Administrative Record ("A.R.")[2] at 11-12, 25, 28, 289.)[3]  During the period at issue, the store – which largely carried "low dollar" items such as canned and packaged goods, single-serving meals, and individual beverages – had one cash register, no shopping baskets or carts, and no optical scanners for use at checkout.  (Defs.' 56.1 ¶¶ 32-34; Pl.'s 56.1 ¶¶ 14-16; A.R. at 404.)  On March 5, 2019, the USDA's Food and Nutrition Service ("FNS") approved Nova Grocery's application to participate in SNAP as a small grocery store.  (A.R. at 288.)

On October 21, 2019, FNS sent Nova Grocery a letter charging the store with trafficking in SNAP benefits – *i.e.*, exchanging SNAP benefits for cash or other ineligible items – between March 2019 and August 2019.  (*Id.* at 301-16.)  In

---

[2] The court collectively refers to ECF Nos. 30-1, 31-1, and 32-1 as the Administrative Record and uses the pagination provided on the bottom right-hand corner of the page.
[3] Plaintiff asserts that Nova Grocery "actually measures closer to 1,000 square feet."  (Pl.'s 56.1 ¶ 13 (citing A.R. at 28).)  The page cited by Plaintiff, however, states that Nova Grocery is approximately 600 square feet.  (A.R. at 28.)  Similarly, although Plaintiff asserts that Nova Grocery "stayed open 24 hours a day" during the summer (Pl.'s 56.1 ¶ 8 (citing A.R. at 289)), the page cited by Plaintiff provides no support for that assertion.  (A.R. at 289 (stating that Nova Grocery was open "7 days a week 7:00 am – 10:00 pm").)

determining whether a participating store has engaged in trafficking, FNS may rely on "evidence obtained through a transaction report under an electronic benefit transfer system." 7 U.S.C. § 2021(a)(2); 7 C.F.R. § 278.6(a). The FNS charge letter's allegations were based on over 300 suspicious transactions from review of electronic benefit transfer ("EBT") records that fell into two general categories: (1) the same SNAP household conducted multiple transactions at Nova Grocery within a short time period, and (2) Nova Grocery processed multiple transactions that were considered to be large, based on the store's observed characteristics and food stock. (*Id.* at 301.) With respect to the first category, FNS flagged 133 violative transactions with a total dollar value of $9,065.17. (*Id.* at 304-10.) On August 1, 2019, for example, a single SNAP household made one purchase for $70.99 at 3:05 AM – more than five hours after the store closed – and made a second purchase for $70.99 less than a minute later. (*Id.* at 304.) With respect to the second category, FNS flagged 287 transactions with a total dollar value of $23,421.19. (*Id.* at 311-16.) All of the transactions in this second category exceeded $43.00, with more than sixty exceeding $100.00 and one exceeding $200.00. (*Id.*)

Nova Grocery's counsel objected to the charge of trafficking by letter dated October 30, 2019. (*Id.* at 319-22.) Counsel argued that "[t]he mere submission of analytical numbers

should not be sufficient to establish trafficking." (*Id.* at 321.)
Counsel also offered various explanations for the transaction data
highlighted by FNS, including that (1) Nova Grocery is situated in
a low-income area of Brooklyn with many SNAP-eligible households;
(2) "it is not unusual for customers to complete one transaction
and later (which often equates to the following day) make another
transaction"; and (3) Nova Grocery had a credit system whereby
customers would pay off their bill when their SNAP benefits became
available. (*Id.* at 320-21.)   Finally, although counsel did not
specifically request a civil monetary penalty in lieu of permanent
disqualification, his letter argued that Nova Grocery had
established an "effective compliance program which promoted full
compliance with all SNAP regulations." (*Id.* at 320.)

In support of these claims, Nova Grocery's counsel
attached pictures from the store and affidavits from owner Jinnat
Ara Begum and employee Mohammed Uddin.   In the affidavits, Begum
and Uddin declared that they had never exchanged a customer's SNAP
benefits for cash or other ineligible items.   (*Id.* at 324, 330.)
Beggum and Uddin also attested to the existence of a credit system
whereby customers would pay down their balance when their SNAP
benefits became available.   (*Id.* at 324-25, 330-31.)   In addition
to the affidavits, Nova Grocery's counsel attached four scanned
pages that purported to reflect "a log of the credit owed by
various customers as part of this SNAP/EBT credit system." (*Id.*

at 321, 326-29.)  Three of the four pages appear to refer to the same individual, and two of the four pages appear to be markings on a brown paper bag.  (*Id.* at 326-29.)  Finally, Nova Grocery's counsel included an undated document entitled "Nova Grocery, Inc. Supplemental Nutrition Assistance Program Policy & Procedures," as well as a signed acknowledgement – dated October 1, 2017 – regarding Nova Grocery's policies and procedures for SNAP.  (*Id.* at 332-35.)[4]

By letter dated December 17, 2019, FNS affirmed its finding of trafficking and concluded that Nova Grocery was not entitled to a civil monetary penalty in lieu of permanent disqualification.  (*Id.* at 365-66.)  On December 24, 2019, Nova Grocery requested review of FNS's decision before the USDA's Administrative Review Branch.  (*Id.* at 371-74.)  On April 6, 2020, the USDA issued a final decision affirming the finding of trafficking as well as the sanction of permanent disqualification.  (*Id.* at 399-409.)

Nova Grocery commenced this action on May 12, 2020, seeking reversal of the USDA's final decision and asserting violations of the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment.  (ECF No. 1 ("Compl.").)

---

[4] On October 31, 2019, FNS requested additional documentation to support counsel's claim that Nova Grocery extended credit to its SNAP customers.  (*Id.* at 351-52.)  The record does not reflect a response by Nova Grocery to the October 31, 2019 request.  (*See id.* at 361.)

With the consent of Defendants, the court granted Plaintiff's motion to stay the disqualification pending the disposition of this action. (7/15/20 Minute Order.) On March 16, 2021, the court held a pre-motion conference regarding Defendants' proposed motion for summary judgment, which is now fully briefed and ripe for decision. (3/16/21 Minute Entry.)

## LEGAL STANDARD

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Rojas*, 660 F.3d at 104. In deciding a summary judgment

motion, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Food and Nutrition Act provides for "a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue . . . ." 7 U.S.C. § 2023(a)(15). The court "must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings." *Nadia Int'l Mkt. v. United States*, 689 F. App'x 30, 33 (2d Cir. 2017) (quoting *Ibrahim v. United States*, 834 F.2d 52, 53-54 (2d Cir. 1987)); *see also, e.g.*, *Timsina v. United States*, 835 F. App'x 633, 635 (2d Cir. 2020) (explaining that the court "reexamine[s] the agency's decision on a fresh record, rather than determining whether the administrative

decision was supported by substantial evidence" (quoting *Ibrahim*, 834 F.2d at 53)).   When reviewing the sanction imposed by the agency, the court assesses "whether the Secretary's action was arbitrary or capricious, *i.e.*, whether it was unwarranted in law or without justification in fact." *Nadia Int'l Mkt.*, 689 F. App'x at 33 (quotations and citation omitted).

## DISCUSSION

Trafficking is defined to include "buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food . . . ." 7 C.F.R. § 271.2.  A finding of trafficking may be based on "on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system." 7 U.S.C. § 2021(a)(2).  The agency "may permanently disqualify a store 'upon . . . the first occasion' of SNAP benefits trafficking." *Timsina*, 835 F. App'x at 636 (alteration original) (quoting 7 U.S.C. § 2021(b)(3)(B)).

### I.  Burden of Proof

The Second Circuit "has not yet decided which party bears the burden of proof at a trial under § 2023(a)(15) – *i.e.*, whether the [store] must prove by a preponderance of the evidence that the disqualification decision 'is invalid,' or the government must prove 'the validity of the questioned administrative action.'" *Timsina*, 835 F. App'x at 635 n.2 (citations omitted).  "[A]ll of

the courts of appeals that have addressed the burden-of-proof issue under Section 2023," however, "have placed the burden of proof on the party challenging the USDA's finding of liability." *Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 378 (1st Cir. 2018) (collecting cases). Similarly, a "multitude of other courts in this Circuit . . . have held that the burden rests with the '[p]laintiffs, as the parties challenging their permanent disqualification from SNAP.'" *Loma Deli Grocery Corp. v. United States*, 2021 WL 4135216, at *6 (S.D.N.Y. Sept. 10, 2021) (collecting cases) (citation omitted; second alteration original). Although the court has no basis to disturb this consensus, the court ultimately need not resolve the question of which party bears the burden of proof because, "even assuming the Secretary bears the burden of proof, a reasonable factfinder could conclude only that [Nova Grocery] had engaged in the trafficking of SNAP benefits." *Nadia Int'l Mkt.*, 689 F. App'x at 33 n.1.

## II. **Nova Grocery Engaged in Trafficking**

The Food and Nutrition Act provides express statutory authority for the USDA to base a finding of trafficking on "evidence obtained through a transaction report under an electronic benefit transfer system." 7 U.S.C. § 2021(a)(2). As a result, the Second Circuit has held that it is "entirely proper" for the Agency "to rely on transaction data *alone* in making its trafficking determination." *Nadia Int'l Mkt.*, 689 F. App'x at 33

(emphasis added); *see also, e.g.*, *Capellan v. United States*, 2020 WL 1047907, at *4 (S.D.N.Y. Mar. 4, 2020) ("[A] pattern of suspicious transactions can be sufficient evidence for [the Agency's] disqualification determination to be valid."); *Duchimaza v. United States*, 211 F. Supp. 3d 421, 432 (D. Conn. 2016) ("[T]he Government may permanently disqualify a retailer on the basis of EBT data."); *109 Merrick Deli Corp. v. United States*, 2014 WL 6891944, at *4 (E.D.N.Y. Sept. 30, 2014) (finding "no legal basis for [the store's] assertion that electronic EBT transaction data, alone, cannot sustain a trafficking violation"). Here, the transaction data identified by the Agency – in conjunction with its observations regarding Nova Grocery and nearby stores – provide overwhelming circumstantial evidence of trafficking that is unrebutted on summary judgment.

As discussed above, the Agency identified 57 sets of transactions – 133 transactions total – that were completed by the same household within a short period of time. (A.R. at 304-10.) To take just a few examples: on June 26, 2019, a household completed a transaction for $56.18 before completing a transaction for $68.56 less than two minutes later; on July 1, 2019, a household completed a transaction for $80.00 before completing a transaction for $100.00 approximately an hour-and-a-half later; on July 10, 2019, a household completed a transaction for $99.86 before completing a transaction for $58.65 less than an hour-and-

a-half later; on August 1, 2019, a household completed two transactions for $70.99 in less than a minute; and on August 17, 2019, a household completed transactions for $75.99, $75.99, and $22.22 within a span of five minutes. (*Id.*)  As courts in this circuit have recognized, "large, successive transactions made by a single household in a short period of time" represent "compelling evidence of trafficking." *Brothers Grocery & Deli Corp. v. United States*, 2021 WL 4443723, at *10 (S.D.N.Y. Sept. 28, 2021); *see also, e.g., Loma Deli Grocery Corp.*, 2021 WL 4135216, at *7 (collecting cases).

The Agency also identified 287 transactions that were excessively large based on the store's observed characteristics and food stock. (A.R. at 311-16.)  For example, customers completed more than sixty transactions in excess of $100 and one transaction in excess of $200. (*Id.* at 311-12.)  As outlined above, however, Nova Grocery was a small store that carried limited SNAP-eligible items such as staple foods, snacks, and beverages, with its most expensive item being baby formula priced at $39.99. (*See, e.g., id.* at 290-92, 404-05.)  The store had one cash register, no shopping baskets or carts, and no optical scanner for use at checkout. (*Id.* at 289, 404.)

In light of Nova Grocery's store characteristics and limited stock of SNAP-eligible items, the large number of high-dollar transactions is compelling evidence of trafficking. *See,*

*e.g.*, *SS Grocery, Inc. v. U.S. Dep't of Agric.*, 340 F. Supp. 3d 172, 182 (E.D.N.Y. 2018) ("Given [the store's] size, layout, lack of shopping carts, as well as lack of technology to quickly process large transactions, it is highly implausible that each and every one of the excessively large transactions took place."). That is particularly true here because several large transactions occurred within a short period of time. On August 6, 2019, for example, Nova Grocery processed transactions of $167.86, $149.29, $96.29, all in less than a half-hour. (A.R. at 311-12.) And just three days later, Nova Grocery processed transactions of $85.99 and $99.99 in less than two minutes. (*Id.* at 312-13.) Having conducted a *de novo* review of the record, the court finds that Nova Grocery "lacked the high-priced inventory or checkout mechanisms needed to process sales at the speed and total dollar value indicated on the transaction reports." *Nadia Int'l Mkt.*, 689 F. App'x at 33.

The undisputed evidence of Nova Grocery's trafficking is even more compelling after considering similar SNAP-eligible stores. The dollar amounts for transactions at Nova Grocery were 26% higher than other small grocery stores in New York, for example, and the total amount of EBT SNAP transactions at Nova Grocery was 33% higher – despite the fact that there were 77 authorized SNAP stores within a half-mile radius of Nova Grocery. (Defs.' 56.1 ¶ 37.) Although a store "might have higher than

average SNAP transaction amounts due to the lack of access to other SNAP authorized stores," the plethora of nearby stores suggests that Nova Grocery's higher-than-average transaction amounts are indicative of trafficking, particularly in light of the store's limited stock. *E. Vill. New Deli Corp. v. United States*, 2021 WL 5507048, at *8 (S.D.N.Y. Nov. 23, 2021); *see also, e.g., Timsina*, 835 F. App'x at 636-37 ("[T]he factfinder may reasonably infer trafficking when the redemption data shows that a store regularly processes purported SNAP transactions for significantly higher per-transaction amounts than nearby stores offering similar wares." (alteration original) (quoting *Irobe*, 890 F.3d at 379)).

Further illustrating the point, the Agency identified Nova Grocery customers who did shop at larger SNAP-eligible stores nearby, but who transacted much larger amounts at Nova Grocery. On two days in April 2019, for example, one household transacted $157.53 at Nova Grocery and just $11.17 at a nearby supermarket. (A.R. at 361.) On two days in July 2019, the same household transacted $292.55 at Nova Grocery and $168.34 at a nearby superstore. (*Id.*) And on two days in August 2019, the same household transacted $176.98 at Nova Grocery and $13.66 at a nearby supermarket. (*Id.*) As the Agency concluded, this pattern is also indicative of trafficking in light of Nova Grocery's comparatively small size and limited stock. Indeed, in affirming the grant of summary judgment in *Timsina*, the Second Circuit found it

"particularly noteworthy" that a particular household spent under $200 at a nearby Costco before spending more than $400 at the much smaller subject store, less than an hour later.  835 F. App'x at 633; *see also, e.g.*, *E. Vill. New Deli Corp.*, 2021 WL 5507048, at *7 (granting summary judgment against store where "[f]urther circumstantial evidence of violations [was] supplied by the suspicious shopping patterns of various households that shopped at both [the subject store] and nearby grocery stores").

    Plaintiff's five-page opposition to Defendants' motion – which cites no caselaw other than a rote recitation of the summary judgment standard – does not dispute the Agency's transaction records or otherwise demonstrate a genuine issue of material fact.  Instead, Plaintiff criticizes the lack of "direct" evidence of trafficking and argues that summary judgment should be denied without direct evidence like an "actual individual" who witnessed the trafficking.  (ECF No. 26 ("Pl.'s Opp'n") at 2, 4-5.)  That is not the law.  As the Second Circuit has "emphasized time and again," including in this precise context, circumstantial evidence "is of no lesser probative value than direct evidence." *Timsina*, 835 F. App'x at 637 (citation omitted).  That is especially true "when, as here, it is the only proof likely to be available." *Id.*; *see also, e.g.*, *Loma Deli Grocery Corp.*, 2021 WL 4135216, at *8 ("[The Agency] does not need to provide evidence

that a store was caught 'red-handed' engaging in a food stamp violation [at] the summary judgment stage." (citation omitted)).

Other than its misapprehension of the law, Nova Grocery offers precious little to rebut the Agency's overwhelming circumstantial evidence of trafficking.  For example, Nova Grocery obtained affidavits from four customers who stated that they purchased items on credit and paid for the balance, "in just one transaction," when their SNAP benefits became available.  (ECF No. 28-3 at 6-16.)  One of those customers, however, did not make any of the transactions on which the disqualification was based.  (*Id.* at 2-3.)  The other three customers collectively completed only six of the more than 300 transactions on which the disqualification was based.  (*Id.* at 3-4.)

Thus, "even if [Nova Grocery's] proffered explanations could account for some of the suspicious transactions, there still remained ample circumstantial evidence to support the inference that [Nova Grocery] had trafficked in SNAP benefits."  *Timsina*, 835 F. App'x at 637; *see also Nadia Int'l Mkt.*, 689 F. App'x at 33 (affirming grant of summary judgment where store's accountant identified only three transactions to support the claim "that the suspect transactions were the result of customers buying goods on credit"); *Loma Grocery Deli Corp.*, 2021 WL 4135216, at *10 (finding that affidavits from eight customers "d[id] not call into question the inference of trafficking arising from the 328 suspicious

transactions"). Although it may be "unfortunate[]" for Nova Grocery that other customers were unwilling to sign similar affidavits (Pl.'s Opp'n at 4), the affidavits before the court are insufficient to demonstrate a genuine dispute of material fact. The same is true for the purported credit ledger submitted by Nova Grocery, which appears to relate to a handful of transactions by a single customer and which Nova Grocery failed to connect to any of the transactions identified by the Agency. (A.R. at 326-29.)

Finally, an owner (Jinnat Ara Begum) and employee (Mohammed Uddin) of Nova Grocery submitted affidavits stating that they never exchanged SNAP benefits for cash or other ineligible items. (A.R. at 324, 330.) The affidavits, however, do not state that Begum and Uddin were the only individuals who processed SNAP transactions at Nova Grocery. Although Begum declares that she is "the" owner of Nova Grocery and that Uddin was her only "employee" (*id.* at 324), the record reflects that Begum had a co-owner named Md Monirul Hoq Chowdhury. (*See, e.g.*, *id.* at 6, 23, 175, 288, 301, 369, 397.) Indeed, the Agency specifically noted that although it received affidavits from Begum and Uddin, "there are two owner[s] listed" for Nova Grocery. (*Id.* at 364.) Thus, the two affidavits in the record are insufficient to raise a genuine issue as to whether Chowdhury – or any other person who may have processed transactions for Nova Grocery – engaged in trafficking. Moreover, "it is well-settled that 'a party cannot create a triable

issue of fact merely by stating in an affidavit the very proposition they are trying to prove.'" *Loma Deli Grocery Corp.*, 2021 WL 4135216, at *9 (quoting *Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010)); *see also, e.g.*, *Sky Grocery, LLC v. U.S. Dep't of Agric.*, 2017 WL 1054484, at *9 (D. Conn. Mar. 20, 2017) (granting summary judgment and rejecting "the unsubstantiated affidavit of [the store's] owner stating that trafficking did not occur"); *E. Vill. New Deli Corp.*, 2021 WL 5507048, at *8 (same). Accordingly, even if the Begum and Uddin affidavits had accounted for Chowdhury or other individuals who may have processed transactions for Nova Grocery, the court would still conclude that the affidavits are insufficient to demonstrate a genuine issue of material fact.

In short, Defendants have marshalled an overwhelming array of circumstantial evidence that Nova Grocery engaged in trafficking, including hundreds of repetitive transactions by individual households within a short period of time; hundreds of transactions that were exceedingly large in light of Nova Grocery's store characteristics and stock of SNAP-eligible items; an analysis of Nova Grocery's SNAP transactions compared to stores of a similar size in New York; and an analysis of individual households who shopped at both Nova Grocery and larger stores nearby. In response, Nova Grocery offers a handful of conclusory affidavits that, at best, speak to only a fraction of the transactions on which the disqualification was based. Thus,

regardless of whether it is Nova Grocery's burden to prove that each and every transaction was not an instance of trafficking – as courts have overwhelmingly concluded – or the Agency's burden to prove that at least one transaction was an instance of trafficking, the evidence in the record is "sufficient to establish as a matter of law that [Nova Grocery] engaged in trafficking of SNAP benefits." *Nadia Int'l Mkt.*, 689 F. App'x at 33.

III. **The Permanent Disqualification Was Not Arbitrary and Capricious**

As an alternative to permanent disqualification, the Agency has discretion to impose a civil monetary penalty for SNAP benefits trafficking "if the Secretary determines that there is substantial evidence that [the] store or food concern had an effective policy and program in effect to prevent violations . . . ." 7 U.S.C. § 2021(b)(3)(B).  The Agency determines whether a civil monetary penalty is warranted based on four criteria: (1) whether the firm developed an effective compliance policy under the regulations; (2) whether the firm established that its compliance policy and program were in operation at the location where the violations occurred prior to the issuance of the charge letter; (3) whether the firm developed and instituted an effective personnel training program under the regulations; and (4), as relevant here, whether it was only the first occasion in which firm management was involved in trafficking violations.  7 C.F.R.

§ 278.6(i).  With respect to the first criterion, the Agency considers "written and dated statements of firm policy which reflect a commitment to ensure that the firm is operated in a manner consistent with . . . the proper acceptance and handling of food coupons."  *Id.* § 278.6(i)(1).  With respect to the second criterion, "such policy statements shall be considered only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation."  *Id.*  With respect to the third criterion, the Agency requires stores to provide "dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s)."  *Id.* § 278.6(i)(2).

"A federal court's determination of whether the imposition of a penalty is arbitrary or capricious is a matter of law that is properly decided on a motion for summary judgment."  *SS Grocery, Inc.*, 340 F. Supp. 3d at 185.  "If the penalty imposed by [the Agency] is in accord with its own guidelines, district courts may not deem the underlying decision arbitrary and capricious."  *Id.*; *see also, e.g.*, *Arias v. United States*, 2014 WL 5004409, at *11 (S.D.N.Y. Sept. 29, 2014) ("If the penalty imposed is in accordance with the settled policy of the [Agency], it is

not arbitrary or capricious." (citation omitted)).   The court
concludes that the Agency followed the applicable regulations, and
thus its decision to permanently disqualify Nova Grocery was not
arbitrary and capricious.

To begin, Nova Grocery's response to the charge letter
did not specifically request a civil monetary penalty in lieu of
permanent disqualification.  (A.R. at 319-22; *see id.* at 362.)  In
*Nadia International Market*, the Second Circuit affirmed a
permanent disqualification from SNAP where the store "never made
. . . a request to the agency" for a civil monetary penalty.  689
F. App'x at 34.  In addition, the documentation submitted by Nova
Grocery came nowhere close to satisfying the exacting regulatory
standards.

First, the undated policy document submitted by Nova
Grocery (A.R. at 333-36) was not a "written and dated statement[],"
and Nova Grocery failed to establish that the policy was provided
to employees "prior to the commission of the violation[s]."  7
C.F.R. § 278.6(i)(1).  Second, the Agency rightfully cast doubt on
the acknowledgement of SNAP training because it was dated October
1, 2017 – nearly a year-and-a-half before Nova Grocery was ever
authorized to participate in SNAP.  (A.R. at 333; *see id.* at 363
("It is questionable why there would be a SNAP training program in
place . . . before the store was authorized, but not have any
documentation showing training was provided following

authorization in 2019.").)   In any event, the training acknowledgement submitted by Nova Grocery did not include "training curricula and records of dates training sessions were conducted." 7 C.F.R. § 278.6(i)(2); *see, e.g.*, *E. Vill. New Deli Corp.*, 2021 WL 5507048, at *10 (affirming permanent disqualification where store failed to provide dated training curricula or contemporaneous training records). Finally, although the declarations from Nova Grocery's co-owner and employee attested to the existence of regular training (A.R. at 324, 330), "[s]tore owners cannot simply attest to having effective antifraud programs; rather, they must prove it." *Rosario v. United States*, 2017 WL 4316093, at *4 (S.D.N.Y. Sept. 27, 2017) (quoting *Traficanti v. United States*, 227 F.3d 170, 175 (4th Cir. 2000)). In sum, the decision to permanently disqualify Nova Grocery was not arbitrary and capricious because the Agency properly followed its regulations, which demand substantial and contemporaneous evidence of effective policies and training programs that existed prior to the violations.

## IV.  Nova Grocery Abandoned Its Meritless APA and Due Process Claims

In addition to its claim under the Food and Nutrition Act, Nova Grocery's complaint asserted violations of the APA and the Due Process Clause. (Compl. at 7-9.)  Although Defendants moved for summary judgment on those claims (ECF No. 28-1 ("Defs.'

Mem.") at 13-17), Nova Grocery's opposition does not respond to Defendants' arguments for dismissal. Accordingly, the court deems Nova Grocery's APA and due process claims abandoned. *See, e.g.*, *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Callahan v. County of Suffolk*, 2022 WL 1283610, at *8 (E.D.N.Y. Apr. 29, 2022) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (citation omitted)).

In any event, the court agrees with Defendants that the APA and due process claims are meritless. First, "an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 600 (2016). The *de novo* review provision of 7 U.S.C. § 2023(a)(15) provides such an adequate alternative. *See, e.g.*, *E. Vill. New Deli Corp.*, 2021 WL 5507048, at *10 (collecting cases). Second, "[t]he trial *de novo* provision clearly afforded full procedural due process." *Ibrahim*, 834 F.2d at 54; *see also, e.g.*, *Nadia Int'l Mkt.*, 689 F. App'x at 34 (finding "no merit in [the plaintiff's] arguments that the administrative process violated its due process rights"). Finally, "prevention

of illegal activity within the [SNAP] program is a legitimate government purpose," and therefore any substantive due process claim also fails. *E. Vill. New Deli Corp.*, 2021 WL 5507048, at *11 (alteration original; citation omitted); *see also, e.g.*, *Muazeb v. United States*, 2019 WL 1613433, at *12 (S.D.N.Y. Mar. 28, 2019) (collecting cases rejecting substantive due process claims based on disqualification from SNAP). Accordingly, summary judgment for Defendants is also warranted on Nova Grocery's APA and due process claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:    Brooklyn, New York
          July 8, 2022